**Affirmed and Majority and Dissenting Opinions filed March 17, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00480-CV

**ARBOR WINDSOR COURT, LTD., Appellant**

**V.**

**WEEKLEY HOMES, LP, Appellee**

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2009-55538**

## M A J O R I T Y   O P I N I O N

Appellant, Arbor Windsor Court, Ltd. (Arbor), appeals the trial court's judgment following a jury verdict. Specifically, in two main issues, Arbor contends the trial court erred in rendering a take-nothing judgment on its breach of contract claims against Weekley Homes, LP (Weekley). Weekley also asserts two conditional cross-points in support of the trial court's judgment. We affirm.

## I. BACKGROUND

### A. Summary Factual Background

In April 2006, Arbor and Weekley entered into an "Agreement for Sale and Purchase of Lots" (the Agreement) whereby Arbor would purchase the land and develop the lots, and then Weekley would buy the developed lots. To that end, Arbor secured a $3,850,000 loan to purchase the land and develop 32–35 lots. Arbor's loan had a two year payoff, beginning on June 30, 2006, and was secured by a deed of trust. The Agreement between Arbor and Weekley provided a rolling schedule for Weekley to purchase the lots. From 2006 to December 1, 2008, the disputed evidence at trial showed that each party believed the other was not fulfilling its obligations under the Agreement and they attempted resolution through amended agreements, culminating in the parties' final Fourth Amendment. By this time, Weekley had bought only 18 of the lots and, as a result, Arbor alleges, Arbor was in default on the loan.

In March 2009, the mortgage company advised Arbor that Texas Community Bank purchased its loan. Arbor later learned the loan had been subsequently purchased by FETC, the entity which eventually gave Arbor notice of its intent to post the land for foreclosure. Arbor proposed to Weekley that Arbor and Weekley jointly attempt to avoid the foreclosure. They did not. FETC foreclosed on the property. Weekley appeared at the foreclosure sale and purchased the property for $1,320,000.

**B.    Procedural Background**

Arbor sued Weekley[1] for breach of the Agreement and its amendments for failing to purchase lots according to the schedule, as well as for fraud and wrongful foreclosure.  Weekley counter sued Arbor for breach of contract.  The parties tried their claims to a jury.[2]  Some of the jury's answers favored Arbor and some favored Weekley.  Because the issues dispositive of this appeal turn entirely upon the jury's answers to (or failures to answer) Questions Nos. 1, 2, 3, and 4, we set forth those questions and any associated predicate instructions verbatim, along with the responses from the jury:

- Question No. 1

  Question No. 1
  Do you find that Arbor Windsor Court performed all of the conditions precedent to the agreement as set forth below:

  > Provided Weekley Homes with 15 days written notice of default under the written agreement so that Weekley could cure such default.

  Answer "Yes" or "No."

The jury answered Question No. 1 "No."

---

[1] This litigation began with Arbor's suit against FETC seeking to enjoin foreclosure. Arbor also filed a notice of lis pendens.  Weekley learned of the lis pendens when it attempted to sell a home in the subdivision; it intervened in the "Arbor v. FETC" suit to quiet title and to obtain a release of the lis pendens.  Arbor then amended its petition, adding additional claims against FETC, Weekley, and various homeowners.  Weekley obtained its quiet title and a release of the lis pendens.  Arbor then non-suited the homeowners and FETC, thereby leaving Weekley as the only defendant at trial.

[2] The trial court ruled that the only questions to be submitted to the jury were on the parties' respective breach of contract claims, thereby directing a verdict on Arbor's other claims. Arbor does not appeal from this decision.

- <u>Question No. 2</u>

Question No. 2 is preceded by the following predicate instruction: "If you answered 'Yes' to Question No. 1, answer the following question. Otherwise, do not answer question No. 2."

> Question No. 2
> Was Arbor Windsor Court excused from sending a notice of default to Weekley Homes?
>
> You are instructed that Arbor Windsor Court is excused from complying if the failure, if any, was
> 1. not material, or
> 2. was waived, or
> 3. if Weekley Homes anticipatorily repudiated the agreement or
> 4. if Weekley Homes is estopped from complaining of Arbor Windsor Court's failure to comply with the agreement.
>
> Answer "Yes" or "No."

The jury did not answer Question No. 2 because of the predicate.

- <u>Question No. 3</u>

> Question No. 3
> Did Weekley Homes fail to comply with the agreement?
>
> You are instructed that Weekley Homes is excused from complying if the failure, if any, was
> 1. not material, or
> 2. was waived, or
> 3. if Arbor Windsor Court anticipatorily repudiated the agreement
> 4. if Arbor Windsor Court is estopped from complaining of Weekley's failure to comply with the agreement.
>
> Answer "Yes" or "No."

The jury answered Question No. 3 "Yes."

- Question No. 4

Question No. 4
Did Arbor Windsor Court fail to comply with the agreement?

You are instructed that Arbor Windsor Court is excused from complying if the failure, if any, was
1. not material, or
2. was waived, or
3. if Weekley Homes anticipatorily repudiated the agreement or
4. if Weekley Homes is estopped from complaining of Arbor Windsor Court's failure to comply with the agreement.

Answer "Yes" or "No."

The jury answered Question No. 4 "No."

Arbor sought judgment on the jury verdict based upon the jury's answer to Question No. 3 (Weekley failed to comply). Weekley sought judgment on the jury verdict based upon the jury's answer to Question No. 1 (Arbor did not perform the condition precedent), or in the alternative, judgment notwithstanding the verdict. The trial court rendered a take-nothing judgment in favor of Weekley without specifying the basis therefor. This appeal ensued.

## II. ANALYSIS

### A. Weekley's Motion for Judgment on the Verdict

The sole basis for Weekley's motion for judgment on the verdict was the jury's answer to Question No. 1. As a factual matter, Arbor did not and does not here dispute that it failed to send the written notice. Arbor's factual position is that

it "accepted Weekley's request not to send this notice." Therefore, Arbor does not challenge the sufficiency of the evidence to support the answer to Question No. 1.

Instead, Arbor argues two independent legal reasons that the jury's answer to Question No. 1 on condition precedent does not support a Weekley Homes judgment. Both of these issues turn on well-established law governing conditions precedent: A condition precedent must either be met or excused before the other party's obligation may be enforced.[3] *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). First,[4] Arbor argues that Question No. 1 should not have been submitted to the jury because the contractual fifteen-day notice provision is not a condition precedent as a matter of law.[5] Second, Arbor argues that even if the notice provision is a condition precedent, the jury's

[3] We note that in some circumstances abatement is the proper remedy for the failure of a party to provide notice of default and an opportunity to cure. *See, e.g.*, *Shafighi v. Tex. Farmers Ins. Co.*, No. 14-12-00082-CV, 2013 WL 1803609, at *5 (Tex. App.—Houston [14th Dist.] Apr. 30, 2013, no pet.) (mem. op.) (noting that the insurer's remedy to enforce a condition precedent in its policy is abatement). In this case, Weekley did not ask the trial court to abate the action or otherwise afford an opportunity to cure the default. However, Arbor does not argue, and therefore we do not reach, any question about (a) whether Weekley waived the condition precedent by its failure to seek abatement and an opportunity to cure or (b) whether a take nothing judgment is a proper remedy for Arbor's alleged unexcused failure to comply with a condition precedent to give notice of default and an opportunity to cure. As such, we assume for this case, as have the parties, that Arbor may not recover in breach of contract if it has failed to perform an unexcused condition precedent.

[4] We reorder Arbor's issues and first address the trial court's ruling on the motion for entry of judgment on the jury's verdict because that issue is dispositive of the appeal.

[5] Weekley contends that Arbor's challenge is actually a complaint of charge error, which Arbor waived by failing to lodge this objection to the question in the trial court. Arbor does not contend that it preserved a challenge to the wording of Question No. 1. Instead, Arbor argues that, as a legal matter, this court "may look at the written notice provision and determine it is a mere covenant, and not a condition precedent." Because we conclude that the notice provision is a condition precedent, we need not resolve whether Arbor has waived its complaint as an error in the jury charge or whether Arbor has not waived its complaint as an error in the judgment. *See, e.g*, *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 105 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (distinguishing between a claim of jury charge error and a claim that the charge, as submitted, cannot support the judgment).

answer to Question No. 1 became immaterial when the jury explicitly found, in answer to Question No. 4, that Arbor did not fail to comply with the Agreement and thereby implicitly determined that Arbor was excused from performing the condition precedent.

## B.    Standard of Review for Entry of Judgment on Jury Verdict

Our review of a trial court's entry of judgment on a jury verdict presents a pure question of law. *Tex Star Motors, Inc. v. Regal Fin. Co., Ltd.*, 401 S.W.3d 190, 202 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that determining the legal effect of the jury's answers is a question of law). As such, we review the trial court's decision de novo. *See Hicks v. Hicks*, 348 S.W.3d 281, 284 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("We review questions of law de novo."); *see also Resurgence Fin., L.L.C. v. Lawrence*, No. 01-08-00341-CV, 2009 WL 3248285, at *2 (Tex. App.—Houston [1st Dist.] Oct. 8, 2009, no pet.) (mem. op.) (citing *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (stating in the context of entry of judgment that "questions of law are always subject to a *de novo* review")).

### 1.    The fifteen-day notice provision is a condition precedent.

The Agreement included the following fifteen-day notice provision:

> Notwithstanding the foregoing, Seller and Purchaser covenant and agree, each with the other, to give fifteen (15) days' written notice of any default during which time same may be cured prior to exercise of any rights or remedies pursuant to this Agreement.

As outlined above, the jury determined that Arbor did not perform the "condition precedent" to provide Weekley with fifteen days' written notice of default.

We resolve whether a contractual provision is a covenant or a condition precedent by examining the entire contract to determine the parties' intent. *See*

7

*Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Our goal is to determine whether the parties intended that the right or responsibility at issue be conditional. *See* Restatement (Second) of Contracts § 226 cmt. a (1981). As part of that contract review, we apply additional common law principles that reflect Texas public policy disfavoring conditions precedent. For example, the Texas Supreme Court instructs that "[i]n construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible." *Criswell*, 792 S.W.2d at 948. Thus, if the language of the contract is susceptible to a non-condition precedent interpretation, we accept that construction and construe the language as a mere covenant. *See id.*[6]

We begin by noting that neither party argues that the notice provision of the Agreement is ambiguous.[7] As such, neither party undertakes in any way to set forth two reasonable but competing interpretations of the provision. Instead, Arbor points to (a) the parties' use of the word "covenant" and (b) the absurd result that would flow from reading the provision as a condition precedent.[8] And, Weekley points to the parties' use of the term "prior to" and argues that this phrase

---

[6] A covenant is "an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (citing *Reinert v. Lawson*, 113 S.W.2d 293, 294 (Tex. Civ. App.—Waco 1938, no writ)). The remedy for a party's breach of a covenant is a claim for damages. *See id.*

[7] We note the parties' positions on ambiguity for context alone, as we are not bound by such. We must and do consider, as a question of law, whether the Agreement is susceptible to more than one reasonable interpretation after applying the relevant rules of contract construction. *See NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that the parties' arguments about competing interpretations do not render a contract ambiguous).

[8] Prior to verdict, Arbor did not argue that the provision was a covenant instead of a condition precedent. Instead, Arbor asked the jury to determine that Arbor was excused from performing the condition precedent.

constitutes conditional language that is completely without meaning unless it creates a condition precedent.

The parties are in accord on the general principles of contract interpretation as it relates to conditions precedent. To glean the parties' intent to create a condition precedent, we look for conditional language such as "if," "provided that," or "on condition that." *Id.* Our task is to construe the entire agreement, and that task is not altered by the parties' use of "magic words" in the contract or the absence of such words. *See id*.; *see also Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 281–82 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (refusing to find even from the parties' use of the word "condition" that the parties meant "condition precedent").

We note, too, that the conditional language must connect the condition precedent to the conditioned obligation. *See Solar Applications Eng'g, Inc. v T.A. Operating Corp.*, 327 S.W.3d 104, 110 (Tex. 2010) (rejecting the notion that conditioning some obligations necessarily operates to condition others). In other words, the mere existence of conditional language within a contract does not suggest that all obligations of one party are conditions precedent to the performance by the other party. By way of simple example, the Dallas Court of Appeals easily rejected a general contractor's attempt to condition its full payment on a landscaping subcontractor's promise to complete its work within ten days. *See Landscape Design & Constr., Inc. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 377 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.). In that case, Article III of the parties' contract provided that "[t]ime is of the essence and the subcontractor agrees to complete the work as described in Article II within 10 working days of commencement." *Id.* Article V contained the conditional language: "Full payment shall be due when the work described in this contract is

fully completed and performed consistent with Article II and Article IV." *Id.* Neither Article III nor the ten-day promise was mentioned in Article V. *Id.* Thus, the court determined, the promise contained in Article III was not a condition to the full payment obligation in Article V because "Article V makes completion of the work according to Article II the only condition precedent to [the subcontractor's] right to full payment." *Id.*

Turning to Arbor's argument regarding construction, we acknowledge the facial appeal of Arbor's first argument that the parties chose the words "covenant and agree" as the introductory phrase to the contested provision. However, a single word or provision cannot be given controlling effect. *See J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The words "covenant and agree" do not always signal that a provision is purely a covenant. *See Cal-Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 809–10 (Tex. App.—Tyler 1999, no pet.). Nor do those words foreclose our review of the remainder of the contract. Although we resist any interpretation that results in forfeiture, we must nonetheless construe the entire provision to have meaning. *See Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.— Houston [14th Dist.] 2012, pet. denied) (noting that in our effort to avoid construing a provision as a condition precedent we may not ignore plain language). Therefore, the parties' use of the words "covenant and agree" is not dispositive of the construction.

Arbors' second contract construction argument concerning a potential absurd result misses the mark. Focusing on conditions precedent *to formation*, Arbor suggests that to construe the notice provision in this case as a condition precedent to formation of the contract would lead to an absurd result and is therefore an impermissible construction. *See Criswell*, 792 S.W.2d at 948 (noting

10

that when a condition would impose an absurd or impossible result, the agreement must be interpreted as a covenant rather than a condition). We agree, as to contract formation; a party could not be required to give notice of default prior to the formation of the contract. However, there are two types of conditions precedent. One is a condition to the formation of a contract and the other is a condition to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). Indeed, the jury charge defined a "condition precedent," without objection, as "an event that must happen or be performed before a right can accrue to enforce an obligation." Arbor does not address conditions precedent to obligations within an existing contract and, therefore, does not explain how it would be absurd that Arbor's right to resort to remedies under the Agreement is conditioned on its first providing notice to Weekley that it is in default and providing Weekley fifteen days to cure such default. This court has, without absurd results, construed other notice provisions as conditions precedent tied to acts or events that occur subsequent to the making of the contract. *See, e.g.*, *Cajun Constructors*, 380 S.W.3d at 826. We conclude that the construction of the notice provision in this case as a condition precedent does not lead to an absurd result.

The parties do not cite, and we have not found, any cases construing identical language that couples "covenants and agrees" with "prior to." We are persuaded, however, that Weekley is correct that the provision, as a whole and as written, contains explicit conditional language—"prior to"—that will have no meaning if construed as no more than a mere covenant. By their agreement, "Seller and Purchaser covenant and agree, each with the other, to give fifteen (15) days' written notice of any default during which time same may be cured prior to exercise of any rights or remedies pursuant to this Agreement." The sentence does

11

not contain the oft-cited traditional conditioning language: "if," "provided that," or "on condition that." But, again, we are not looking for magic words. Texas courts have found other words and phrases to be conditional language. *See Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.*, No. 05-98-01352-CV, 2001 WL 200144, at *5 (Tex. App.—Dallas Mar. 1 2001, pet. denied) (not designated for publication) (holding that the notice-of-default provision stating "Tenant shall not exercise any such remedy **unless**" is a condition precedent to recovery for breach); *see also Wright v. Modern Group, Ltd.*, No. 13-12-00293-CV, 2013 WL 4714930, at *7 (Tex. App.—Corpus Christi Aug. 30, 2013, pet. denied) (mem. op.) (holding that the term "qualifying event payment" constituted conditional language).

By contrast, the language construed by courts to be mere covenants without condition is wholly distinguishable. For example, our sister court construed an arbitration provision that required "[e]ach of the parties [to] pay an equal share of the arbitration costs, fees, expenses, and of the arbitrator's fees, costs and expenses" not to condition the requesting party's right to demand arbitration. *See Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 693 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Similarly, as outlined above, the Texas Supreme Court found no applicable conditional language in *Solar Applications Engineering*. *See* 327 S.W.3d at 109. The provision stated that Solar's

> final Application for Payment shall be accompanied (except as previously delivered) by: (i) all documentation called for in the Contract Documents, including but not limited to the evidence of insurance, (ii) consent of the surety, if any, to final payment; and (iii) complete and legally effective releases or waivers (satisfactory to [TA]) of all Lien rights arising out of or Liens filed in connection with the Work.

*Id.* (alteration in original).

12

Here, the conditional language "prior to" is within not just the same paragraph as the reference to exercising contractual remedies, but within the same sentence. Arbor's notice of default to Weekley and Weekley's fifteen-day opportunity to cure must occur "prior to" Arbor invoking contractual remedies for Weekley's default. To conclude that the "prior to" phrase does not impose a condition on Arbor's right to invoke remedies, we must place a period after the word "cured," though the parties did not. In that regard, the provision is more like "unless" conditional language. *See Dallas Berkshire Partners*, 2001 WL 200144, at *5 (holding that the notice-of-default provision stating "Tenant shall not exercise any such remedy unless" is a condition precedent to recovery for breach). Arbor does not urge another construction, and we cannot craft this sentence in a way that yields anything other than a condition precedent.

The parties do not point us to any other provisions in the Agreement that aid our construction. However, we find some guidance on the parties' intent in Paragraphs 2 and 17. One of the remedies explicitly available to Arbor under Paragraph 17 of the Agreement on occasion of Weekley's failure to comply with the agreement is to terminate the Agreement and retain the Earnest Money. Yet, Paragraph 2 of the Agreement, entitled "Earnest Money" states that

> [t]he Title Company shall not release the Earnest Money unless and until Seller [Arbor] has provided to the Title Company an affidavit of Seller [Arbor] stating that: 'Substantial Completion pursuant to the Agreement for Sale and Purchase of Lots dated (the Effective Date of his Agreement) has been met on or before the Scheduled Completion Date, a default has occurred by Purchaser under said Agreement, *Seller has provided Purchaser with notice of the default as required in the Agreement, such default has not been cured within the cure period provided in said Agreement*, and Seller is not in default under said Agreement and has not been in default under said Agreement during the period of Purchaser's default.

13

(emphasis added). This paragraph tends to confirm an agreement between the parties that Arbor may not obtain one of the contracted remedies, the Earnest Money, unless and until it swears that it has given Weekley notice and an opportunity to cure.

Paragraph 7, entitled "Substantial Completion," gives some insight into the parties' intentions on another area of notice and cure. It requires Arbor to "promptly furnish written notice" of its belief that all Lots are substantially completed. Weekley then has fifteen days to inspect the Lots and notify Arbor of any item with which it disagrees. The paragraph then states the consequences of Weekley's failure to give such notice: "The failure of Purchaser to so notify Seller within such fifteen (15) day period shall be deemed to be Purchaser's agreement that all conditions to Substantial Completion have been satisfied and that Substantial Completion has occurred." And, Paragraph 7 concludes with the following sentence: "Notwithstanding the foregoing, Purchaser shall have the right to purchase any Lot prior to the Substantial Completion Date, but the same shall not relieve Seller from its covenants and obligations to satisfy the aforementioned requirements for such Lot or Lots in accordance with the terms of this Agreement."

In Paragraph 7, the parties have explicitly stated the effect of silence where notice is required; that is, Weekley is deemed to be in agreement. And, through Paragraph 7, which is in part a notice and cure provision, the parties have expressed their intent that Arbor's obligations under the Agreement are not conditioned on Weekley purchasing a lot *after* Substantial Completion. This paragraph demonstrates how the parties drafted a paragraph to avoid a condition precedent. *See TransTexas Gas Corp. v. Forcenergy Onshore, Inc.*, No. 13-02-387-CV, 2004 WL 1901717, at \*8 (Tex. App.—Corpus Christi Aug. 26, 2004, pet. denied) (mem. op.) (noting that the parties demonstrated in a separate provision of

14

the contract that they knew how to draft a condition precedent if such is what they intended). The absence of any such language in the paragraph at issue here tends to confirm, by contrast, that (a) Arbor giving notice and an opportunity to cure is not simply a choice but a requirement; and (b) Arbor's rights under the Remedies provision do not arise until Arbor gives notice and fifteen days to cure.

In summary, the provision itself contains conditional language. Other paragraphs of the Agreement support the interpretation that the provision is a condition precedent. The provision is not described as a covenant but begins with the introductory words "covenant and agree." To construe the provision as either a covenant or an ambiguous provision in an effort to give meaning to this single phrase out of context would ignore the remaining language and eviscerate the only reasonable meaning of the paragraph. Having examined the contract as a whole, we conclude that we are "compelled to [construe the provision as a condition precedent] by language that may be construed in no other way." *Chambers v. Hunt Petroleum Corp.*, 320 S.W.3d 578, 584 (Tex. App.—Tyler 2010, no pet.) (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)); *see also Cajun Constructors, Inc.*, 380 S.W.3d at 826. We therefore conclude, as a matter of law, that the notice provision is a condition precedent to Arbor's right to remedy for Weekley's default. The trial court did not err in submitting Question No. 1 to the jury.

## 2. Arbor failed to obtain a jury finding on its excuse defense.

Arbor argues that even if the notice provision is a condition precedent, the jury's answer to Question No. 1 will not support a Weekley take-nothing judgment. Arbor acknowledges that "due to a defective condition of the jury question asking whether Arbor Windsor was excused from sending notice of breach, the jury did not expressly say it did not have to do so." Arbor nonetheless

15

argues that once the jury answered "no" to Question No. 4, the jury impliedly determined that Arbor was excused from providing notice, and the jury's answer to Question No. 1 became immaterial.

A jury question is immaterial when its answer cannot alter the effect of the verdict. *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 883 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Arbor reasons that the jury's answer to Question No. 1 cannot alter the effect of the verdict in this case because the jury found that "Arbor Windsor complied with the Agreement." The jury did not, however, find that Arbor complied with the Agreement. The jury found that Arbor did not fail to comply with the Agreement. In Texas law, this is a distinction with a difference.

A negative answer to a jury question on "failed to comply with a contract" is not a positive finding that such party "complied with a contract." *See Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694 (Tex. 1986) (holding that a jury's failure to find breach of contract meant the plaintiffs failed to carry their burden of proof, not that the defendant substantially performed the contract); *see also Cullins v. Foster*, 171 S.W.3d 521, 536–37 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that "[i]f the jury makes a negative finding in answer to a question, it means the party with the burden of proof has failed to carry its burden"). Here, Question No. 4 placed the burden on Weekley to establish that Arbor failed to comply with the Agreement. Thus, the jury's negative answer means no more than Weekley failed to meet its burden to show that Arbor failed to comply with the contract. It is no finding that Arbor actually complied with the contract.

Moreover, as Arbor itself points out, the jury may have concluded in Question No. 4 that Arbor did not fail to comply with the contract for a number of

16

reasons based upon the instructions given. Within Question No. 4, the jury was instructed that Arbor is excused "from complying if the failure, if any, was (1) not material, or (2) not waived, or (3) if Weekley Homes anticipatorily repudiated the agreement or (4) if Weekley Homes is estopped from complaining of Arbor Windsor Court's failure to comply with the agreement." Thus, the jury may have simply concluded that Weekley did not bring a preponderance of evidence either (1) that Arbor failed to comply with the Agreement or (2) that Arbor's failure to comply with the condition precedent was not excused.[9] Even if we were to ignore the fact that neither the question nor the instructions make reference to notice or conditions precedent, we may not, in an effort to interpret the jury's verdict, guess about how the jury reached its answer. Thus, Arbor did not obtain an implicit finding from the jury on its excuse affirmative defense to the notice condition precedent.

Instead, our analysis falls within Texas Rule of Civil Procedure 279[10] and the Texas Supreme Court decision *DiGiuseppe v. Lawler*, 269 S.W.3d 588 (Tex. 2008). In *DiGiuseppe*, the parties submitted their breach of contract claims on broad-form questions. *Id.* at 592. DiGiuseppe failed to obtain a "ready, willing, and able to perform" fact finding to support his request for specific performance. *Id.* The evidence concerning whether DiGiuseppe was ready, willing, and able to perform was conflicting. *Id.* at 595. The Texas Supreme Court determined that the

---

[9] Question No. 4 appears to improperly shift the burden to Weekley to establish that Arbor was not excused from compliance with the contract. Neither party complains here of the burden on the instruction. However, it is further support for our conclusion that the answer to Question No. 4 does not implicitly mean that Arbor met its burden to establish that it was excused from performing the condition precedent.

[10] Rule 279 provides that "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279.

jury's finding that DiGiuseppe "complied with the contract" was neither essential nor necessarily referable under Rule 279 to DiGiuseppe's request for specific performance because the jury might have found under the jury instructions that DiGiuseppe "complied with the contract" because he was excused from complying, not because he was both ready, willing, and able and did, in fact, comply. *See id.* at 598.

Arbor does not and could not argue that the jury's finding on Weekley's breach of contract ground of recovery is necessarily referable to Arbor's excused-condition-precedent ground of defense under Rule 279. As outlined herein, Question No. 4 did not mention the condition precedent, did not place the burden on Arbor, and because of its broad form, did not cause the jury to answer any question that would permit an inference that Arbor brought a preponderance of evidence that it was excused from satisfying the condition precedent.

In summary, Arbor had the burden to prove that it was excused from sending a notice of default to Weekley as a condition precedent to its right to invoke contractual remedies for default. Thus, Arbor also had the burden to obtain a jury finding that it was excused. Because of the improper predicate to Question No. 2, to which Arbor did not object, Arbor did not obtain a jury finding that it was excused. Arbor does not argue that it conclusively established that it was excused from sending notice of default. Therefore, excuse from performing the condition precedent, as an "independent ground . . . of defense" is a ground that has been waived by the failure to submit it. *See* Tex. R. Civ. P. 279.

18

### III. Conclusion

Because we conclude that the fifteen-day notice provision is a condition precedent, and we further conclude that the jury's answer to Question No. 4 does not render the jury's answer to Question No. 1 immaterial, the trial court did not err in the implicit conclusion that Arbor failed to perform an unexcused condition precedent. We, therefore, hold that the trial court properly rendered a take-nothing judgment for Weekley on its affirmative defense, and we affirm the judgment. As such, we do not address Weekley's alternate bases for affirming the judgment.

/s/    Sharon McCally
Justice

Panel consists of Justices McCally, Busby, and Donovan. (Donovan, J., dissenting).

19