

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00380-CV

_____

LINDA SILVERMAN, Appellant

V.

CLAIREMONT H.A., INC., Appellee

_____

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-295889-17

_____

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Justice Gabriel

# MEMORANDUM OPINION

Appellant Linda Silverman complains of the trial court's judgment in favor of appellee Clairemont H.A., Inc., a property owners' association (the Association), on its claims arising from Silverman's repeated failure to pay her property owner's dues and accordant penalties and interest assessed by the Association. In four issues, she challenges alleged deficiencies in the Association's delinquency notices and asserts any amounts assessed in 2013 are unrecoverable as barred by limitations. Because we conclude Silverman's issues have no merit, we affirm the trial court's judgment.

## I. BACKGROUND

### A. THE DECLARATION

In 2002, ICI Development L.L.C. developed a gated residential subdivision in Colleyville—the Clairemont Addition. To preserve "the values and amenities in said community," ICI created the Association in a dedicatory instrument (the Declaration), which also established covenants, conditions, and restrictions for the development. The Declaration provided that "[e]very Owner of a Lot shall automatically be a member of the Association." It further authorized the Association to collect regular and special assessments, including assessments for annual maintenance. If a property owner failed to pay an assessment, the Declaration allowed the Association to charge monthly, compounding interest from the delinquency date until paid, authorized the Association to charge special individual assessments for a property owner's failure to comply with the Declaration, and created a lien against the owners' property for the

2

unpaid amounts; the Association's rights under such a lien were expressly granted by the property owner upon acceptance of her property deed. ICI recorded the Declaration in Tarrant County.

## B. THE ASSESSMENTS

Silverman and her husband bought a home in the Clairemont Addition of Colleyville in 2005. They divorced in 2013, and Silverman was awarded sole ownership of the home.

On April 3, 2013, three months after the 2013 yearly dues payment was due, Silverman wrote to the Association and asked for a "payment arrangement for my current HOA balance in the amount of $1,140.00" that would allow her to pay at least $100 each month until the balance was paid in full. The Association's board unanimously agreed to Silverman's plan, and the board's vice-president and treasurer notified her of its agreement and sent her a payment plan. He clearly told Silverman in the notice letter that "interest must be charge[d] on the unpaid balance per the Homeowner Bylaws." Silverman denied receiving this letter and never made any of her offered payments.

On March 4, 2014, the Association sent Silverman a letter expressing their "surprise[]" that she had made no payments and notifying her that her 2013 arrearage and 2014 dues amounts were delinquent:

> The Board tries to accommodate homeowners to a point and then only
> when the homeowner makes a valiant attempt to meet his or her

3

obligations. When a full year has passed without that year's dues being paid, a penalty of $300.00 is assessed if not paid by March 15th of the following year. Additionally, interest is applied to the unpaid balance and accumulates each month. This is done in order to make the homeowner aware of the severity of the non-payment of dues.

We are taking the time to notify you of the Prior Year Dues Penalty before it is applied to your account on March 15, 2014. Enclosed is your current statement dated March 4th, 2014 showing a balance of $2,659.91.

[The Declaration] states that additional costs could be incurred by the past due homeowner such as Attorney and filing fees.

Silverman did not respond to this letter, but she later testified that she had been in a "very serious motorcycle accident" in 2014 and was hospitalized for an extended period.

On November 1, 2014, the Association sent Silverman a letter notifying her of "the seriousness of your account with the . . . Association." The letter stated that Silverman's unpaid balance through October 31, 2014, was $3,334.32. The Association also informed Silverman that her yearly dues of $1,150 would be assessed on January 31, 2015. On February 9, 2015, Silverman responded by letter, explaining her recent hardships, expressing awareness of the Association's lien, and "requesting a payment plan for my homeowner's dues."[1] She also enclosed a $500 check "to be applied towards my homeowners dues, which is all that I have at this time." In a

---

[1]In this letter, she stated that she had never received a response to her 2013 payment-plan request.

4

phone conversation with the Association's president, Silverman was told that a payment plan would have to be approved by the Association's board. Silverman stated that she did not want the issue discussed by the Association's board, and the president did not "hear back from her after that." The Association applied the $500 to her 2013 delinquent dues.

On November 20, 2015, the Association sent a similar "seriousness" letter to Silverman and informed her that if her unpaid balance of $5,907.02 remained delinquent, it would increase to $6,085.56 on December 31, 2015, based on interest charges. The letter notified Silverman that once her 2016 dues in the amount of $1,265 were assessed, her unpaid balance would be $7,350.56. The Association provided a summary of the nonpayment penalties:

2013 dues    $150 assessed  1/31/13 for not paying year due
                     $300 assessed  1/31/14 for not paying for the second year
                     $600 assessed  1/31/15 for not paying for the third year
2014 dues    $150 assessed  1/31/14 for not paying year due
                     $300 assessed  1/31/15 for not paying for the second year
2015 dues    $150 assessed  1/31/15 for not paying year due

     If your past dues are not made current then the following penalties will be added as of 1/31/16: In addition to the $7350.56 due on 1/1/16[.]

     2013 **-- $1200,** 2014**--$600**, 2015**--$300** and 2016 **$150.00** and this is on top of [the] assessment amount and the 18% annual interest on amount owed.

     Making total due on 1/31/16 $9600.56[.]

5

The Association warned Silverman that nonpayment could result in "legal action." Silverman did not respond.

On January 26, 2016, the Association's treasurer sent an email to Silverman reminding her that her 2016 dues were due January 31, 2016, and that she was delinquent in the amount of $9,600.55. The Association sent Silverman a bill statement by certified mail on February 17, 2016, reflecting that she owed a total of $9,710.81 for unpaid assessments.

On March 8, 2016, Silverman sent a letter to the Association, stating that she was "absolutely appalled by the amount you have charged me," which she asserted was not permitted under the property code. She stated she was protesting the "punitive amounts"—apparently, the penalties and interest—and requested a waiver of those amounts. She also informed the Association that she was "now in a position where [she] can borrow the money to pay the amount of all dues, and dues only, that [she] owe[s]." But Silverman did not take out a loan or otherwise pay the delinquent amounts.

On June 14, 2017, the Association emailed Silverman a "one-time option to take care of [her] past due amount"—Silverman's payment of $11,333.90 within thirty days. Silverman received the offer but never responded.

## C. THE SUIT

On August 8, 2017, counsel for the Association sent Silverman a demand letter for $16,042—$7,492.50 in past dues and interest and $8,550 in assessments "based on

6

your failure to pay your homeowners dues." Counsel informed Silverman that these sums were owed under the terms of the Declaration. Silverman did not respond.

On October 24, 2017, the Association filed suit against Silverman raising a claim for breach of her obligation under the Declaration to pay the assessments and seeking a judicial foreclosure of its assessment lien. It further pleaded for the recovery of "its costs of collections," including attorney's fees. Silverman answered and raised the affirmative defense of limitations in response to "that portion of the debt" that "arose on January 1, 2013." *See* Tex. R. Civ. P. 94.

The Association's claims were tried in a bench trial. The trial court rendered judgment in favor of the Association for $38,340.83 and ordered that the assessment lien attached to the property be foreclosed to pay the judgment. The trial court issued a letter ruling on August 29, 2018, that Silverman had notice of the Declaration and of her duty to pay the assessments, which she failed to do in 2013, 2014, 2015, 2016, and 2017. In its findings of fact and conclusions of law, the trial court found that (1) the Declaration gave the Association the authority to levy regular and special assessments, which were secured by a contractual lien against each lot in the Clairemont Addition, and (2) Silverman failed to pay the assessments, breaching her obligations under the Declaration.

## II. DISCUSSION

On appeal, Silverman argues that the Association did not comply with the statutory notice requirements before levying a fine and filing suit and failed to offer a

payment plan before seeking collection fees as required by statute. She also contends that part of the judgment contained amounts for assessments that were assessed outside the statute of limitations.

## A. NOTICE REQUIREMENTS

The Texas Residential Property Owners Protection Act (RPOPA), applicable here,[2] provides that a property owners' association must give an owner specific, written notice by certified mail before filing an enforcement action against the owner: "Before a property owners' association may . . . file a suit against an owner other than a suit to collect a regular or special assessment or foreclose under an association's lien, . . . the association or its agent must give written notice to the owner by certified mail" of the violation that is the basis for its suit. Tex. Prop. Code Ann. § 209.006(a); *see also id.* § 209.006(b). *See generally Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 588–90 (Tex. App.—Austin 2015, no pet.) (recognizing section 209.006(a) is mandatory but not jurisdictional).[3] Silverman argues in her first issue that the Association failed to comply with this notification statute by emailing her instead of using certified mail. But the Association filed suit to collect the unpaid assessments and to foreclose its

---

[2]The parties agree that RPOPA applies to the interpretation of the Declaration. Based on the language of the Declaration, it does. *See* Tex. Prop. Code Ann. § 209.003(a)–(b).

[3]To the extent Silverman attempts to brief her notification issues as jurisdictional ones, we disagree. No reading of RPOPA indicates that its notice requirements are jurisdictional. *See Park*, 457 S.W.3d at 588–90.

lien.  Under the plain language of section 209.006, it does not apply to the Association's presuit notices.  *See generally Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (recognizing that with statutory interpretation, plain language is the best guide to legislative intent).[4]  We overrule issue one.

Silverman also argues that this same statute, which imposes the same notice requirements before a property owners' association may "levy a fine for a violation of the restrictions or bylaws or rules of the association," was mandatory for the Association before it could collect a fine.  Tex. Prop. Code Ann. § 209.006(a).  The amounts sought by the Association were not fines; instead, they were assessments as that term is defined in RPOPA: "[A] regular assessment, special assessment, or other amount a property owner is required to pay a property owners' association under the dedicatory instrument or by law."  *Id.* § 209.002(1).  Each of the amounts the Association charged to Silverman was specifically authorized under the Declaration; thus, the notification requirements for a fine levy did not apply.[5]  We overrule issue two.

Finally, Silverman asserts that the Association's counsel failed to comply with the specific notification requirements applicable to debt-collection agents, including

---

[4]Even if this section were applicable, Silverman waived any notice deficiency by failing to request an abatement in the trial court.  *See Park*, 457 S.W.3d at 590.

[5]And as before, we acknowledge that Silverman waived any applicable notification requirements by failing to request an abatement in the trial court.  *See Park*, 457 S.W.3d at 590.

9

offering an alternative payment schedule to Silverman; thus, according to Silverman, the Association was not entitled to recover its attorney's fees in the trial court. *See id.* § 209.0064(b). RPOPA defines a collection agent as "a debt collector, as defined by . . . the federal Fair Debt Collection Practices Act." *Id.* § 209.0064(a) (referring to 15 U.S.C.A. § 1692a(6)). The federal act defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A § 1692a(6).

In her answer to the Association's petition, Silverman alleged that the Association could not recover its attorney's fees because the Association "failed to give [her] the notice required by . . . Section 209.0064." In her opening statement at trial, Silverman asserted that "all attorneys are" collection agents; thus, the Association's attorney was required to comply with section 209.0064(b) in order to recover collection fees, which he sought as attorney's fees. No other allegation or proof was offered on the issue of whether the Association's attorney was a collection agent subject to the notice requirements of section 209.0064(b). And the trial court expressly found that the Association's attorney was "not a collection agent as defined in Section 209.[0]064." Silverman does not specifically attack the evidentiary sufficiency to support this finding. As such, it is entitled to the same weight as a jury's

10

verdict and is binding on this court unless Silverman established the contrary as a matter of law. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

An attorney may be considered a collection agent, as defined by federal law, if he regularly engages in consumer-debt collection, including litigation on behalf of a creditor client. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). But here, Silverman offered no evidence that the Association's attorney's principle business purpose is debt collection or that he regularly attempts to collect debts. Thus, she did not establish as a matter of law that the Association's attorney was a collection agent subject to the notice requirements of section 209.0064(b), which was her burden. *See, e.g.*, *Parker v. Buckley Madole, P.C.*, No. 4:17-CV-00307-ALM-CAN, 2018 WL 1704084, at *6 (E.D. Tex. Jan. 8, 2018) (report & recommendation), *adopted*, No. 4:17-CV-307, 2018 WL 1625670, at *1 (E.D. Tex. Apr. 4, 2018); *Spencer v. Hughes Watters Askanase, LLP*, No. 5:15-cv-00233, 2015 WL 3651594, at *5 (W.D. Tex. Jun 11, 2015) (am. order); *accord Acosta v. Gustino*, No. 6:11-cv-1266-Orl-31GJK, 2013 WL 6069862, at *2–4 (M.D. Fla. Nov. 18, 2013). We overrule issue three.

## B. LIMITATIONS

In her fourth issue, Silverman contends that the Association's recovery for amounts assessed in 2013 was time-barred, rendering the judgment infirm for including the 2013 assessments. The parties seem to agree that a four-year limitation period applied to the Association's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3). Because limitations is an affirmative defense, Silverman bore the

11

burden to plead, prove, and secure findings to sustain the defense in the trial court. *See Orr v. Broussard*, 565 S.W.3d 415, 421 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Control Works, Inc. v. Seeman*, No. 01-17-00212-CV, 2018 WL 3150339, at *5 (Tex. App.—Houston [1st Dist.] June 28, 2018, no pet.) (mem. op.); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632–33 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). This she did not do.

Although she referred to limitations in a conclusory allegation in her answer and in her opening argument at trial, Silverman offered no evidence supporting her limitations defense nor did she seek more specificity in the findings and judgment regarding the years implicated in the recovery amount. *See* Tex. R. Civ. P. 299; *Micrea, Inc. v. Eureka Life Ins. Co. of Am.*, 534 S.W.2d 348, 357 (Tex. App.—Fort Worth 1976, writ ref'd n.r.e.). She also did not address limitations in her post-trial, prejudgment brief to the trial court. Silverman failed to establish her affirmative defense or to request the appropriate findings on the defense; she cannot now attack the trial court's failure to credit it. *See Park v. Payne*, 381 S.W.3d 615, 618–19 (Tex. App.—Eastland 2012, no pet.); *Micrea*, 534 S.W.2d at 357.

On appeal, Silverman admits that the trial court's findings and conclusions and judgment did not specify the years from which the trial court derived each portion of the recovery amount, but she asserts that we must "assume[] that the portion of the 2013 debt included within was limitations-barred." We disagree. It was Silverman's burden to show that a portion of the Association's requested recovery was time-

12

barred and ensure the appropriate findings were entered. *See* Tex. R. Civ. P. 299; *Payne*, 381 S.W.3d at 618–19. By failing to do so she has waived any error by the trial court's failure to find on her affirmative defense or by the trial court's damage award. *Payne*, 381 S.W.3d at 618–19. We overrule issue one.

## III. CONCLUSION

Although the trial court was the fact-finder and entered findings of fact and conclusions of law as requested, Silverman does not challenge the evidence to support those findings. Instead, she argues a lack of sufficient pretrial notice under RPOPA, which requirements do not apply to the Association's or its counsel's notices, and a limitations bar, which she neither established nor sought findings on. Accordingly, we overrule her issues and affirm the trial court's judgment.

/s/Lee Gabriel

Lee Gabriel
Justice

Delivered: August 28, 2019